IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TAYLOR RUSSELL, on behalf of himself and all others similarly situated,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.
                                                            /

No. C 09-03239 WHA

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION**

In this proposed class action, plaintiff Taylor Russell seeks to sue the United States on behalf of soldiers and veterans who used credit cards issued by the Army and Air Force Exchange Service. The only remaining claim is for interest on deferred payment plan purchases in excess of that allowed in the credit agreement. The United States moves to dismiss plaintiff's claim as moot. Plaintiff counter-moves for class certification. As to plaintiff's underlying claim, defendant's motion to dismiss is **GRANTED**. Since the motion did not move to eliminate any claims for attorney's fees, there is no occasion at present to rule on that issue. Plaintiff's motion for class certification is **DENIED WITHOUT PREJUDICE**.

**STATEMENT**

The Army and Air Force Exchange Service ("AAFES"), an instrumentality of the United States, issued credit cards to military personnel to purchase uniforms and other

1  merchandise from post-exchange stores in U.S. military bases. The credit-card plan under the
2  AAFES Credit Program Agreement offered two types of purchases: (1) the Uniform Clothing
3  Deferred Payment Plan ("UCDPP") for uniforms and (2) the Deferred Payment Plan ("DPP")
4  for other goods. Card users had the option of paying their balances in full or to pay a minimum
5  monthly payment as shown on their account statements. The UCDPP balances were not subject
6  to a finance charge while DPP balances were subject to a periodic finance charge. The credit
7  agreement required that the finance charge be calculated by applying an interest rate against the
8  balance due.

9      AAFES referred delinquent debts to the Department of the Treasury, which administered
10 the Treasury Offset Program ("TOP"). TOP collected delinquent debts owed to federal agencies
11 and states. Where card users failed to repay their credit-card debt, TOP offset the delinquent
12 debt against funds the government owed the debtor, if any, for benefits and tax refunds.
13 The credit agreement, signed by plaintiff, expressly authorized this referral (Compl. Exh. 1 at
14 ¶ 22). Following the referral to TOP, the United States continued to accrue interest, penalty and
15 administrative charges on a delinquent account.

16     Plaintiff served in the United States Army on active duty from April 1997 until July
17 2000. He opened his AAFES account in 1998 and made required payments until the time of his
18 separation from service in 2000. AAFES claims that the credit account became delinquent
19 shortly after plaintiff left service and remained delinquent until the outstanding balance was paid
20 in full through offsets of his federal tax refunds. In 2009, the United States claims that the
21 account was paid in full by the final offset.

22     Plaintiff claims that the AAFES breached the credit agreement by charging a rate of
23 interest on his delinquent DPP debt that exceeded the amount in the credit agreement.
24 Plaintiff's credit agreement provided that the DPP interest would not exceed bank prime rate
25 plus 4.75 percent, with a minimum of twelve percent per year (Compl. ¶ 4). When plaintiff's
26 debt was transferred to AAFES collections, his balance was $939.97. This balance was assessed
27 at 14.25 percent, which exceeded the amount allowed under the credit agreement (Bedison Decl.
28 ¶ 14).

2

Plaintiff commenced this action in July 2009. In November 2009, an order issued granting defendant's motion for partial judgment on the pleadings. Additionally, plaintiff's claim that improper interest had been charged on the UCDPP debt was dismissed as moot. As with the instant motion, plaintiff had been issued a refund for the improper UCDPP interest. The United States had also conducted an audit for the UCDPP interest that resulted in the adjustment of 177,000 accounts and subsequent refunds for approximately 59,000 additional customers.

On February 6, 2010, as part of a separate audit, AAFES adjusted plaintiff's DPP interest to the minimum rate of twelve percent. AAFES issued a refund check to plaintiff for $149.78 for any interest above twelve percent paid on his DPP balance. As of February 6, 2010, AAFES has audited and adjusted 46,851 accounts to reduce the DPP interest rate to the twelve percent minimum. In addition, AAFES plans to issue refunds for the adjusted interest to approximately 33,902 customers (Bedison Decl. ¶¶ 15–17).

Defendant now moves to dismiss the claim for improper DPP interest based on lack of subject-matter jurisdiction, as the refund has rendered plaintiff's claim moot. Although the undersigned is sympathetic to plaintiff's policy arguments, this order must adhere to the caselaw and grant defendant's motion to dismiss. Plaintiff's claim for attorney's fees, however, will not be dismissed. Plaintiff's motion for class certification is **DENIED WITHOUT PREJUDICE**.

### ANALYSIS

**1. MOTION TO DISMISS.**

In general, a case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *PUC v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996) (internal quotations omitted). There are, however, exceptions to the mootness doctrine.

> A case otherwise moot will be heard if it presents an issue that is capable of repetition while evading review. This exception applies only in exceptional circumstances, and it provides only minimal protection to individual plaintiffs. In order to fit this exception, a controversy must meet two requirements: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation

3

> that the same complaining party would be subjected to the same
> action again.

*Id.* at 1459. Also, "[c]ourts have held that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot, unless there is no reasonable expectation that the wrong will be repeated." *Id.* at 1460.

In *U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 492 (1985) (internal citations omitted) (emphasis added), in reviewing mootness in the class-action context, the Supreme Court stated that:

> where the named plaintiff does have a personal stake at the outset
> of the lawsuit, and where the claim may arise again with respect to
> that plaintiff; [sic] the litigation then may continue notwithstanding
> the named plaintiff's current lack of a personal stake. Since the
> litigant faces some likelihood of becoming involved in the same
> controversy in the future, vigorous advocacy can be expected to
> continue. When, however, there is no chance that the named
> plaintiff's expired claim will reoccur, mootness still can be
> avoided through certification of a class *prior* to expiration of the
> named plaintiff's personal claim.

In other words, to avoid mootness, a claim must have expired after class certification or, if it expired prior to certification, there must be a chance that the expired claim will reoccur with respect to the named plaintiff.

As in the previous dismissal of certain claims, class certification has not yet occurred and there is little chance that plaintiff's claim may arise again. In an even earlier case involving the same counsel, *Briggs v. United States*, 564 F. Supp. 2d 1087, 1095 (N.D. Cal. 2008), the undersigned held that since the plaintiff had not used his credit card since 1993 and was therefore unlikely to be subject to any interest charge on future purchases, the action was moot. *Briggs*, however, was allowed to proceed based on an additional claim for alleged unlawful debt referral. In the earlier motion to dismiss in the instant case, the undersigned similarly reasoned that since plaintiff had not used his account since 2000 and had a zero balance, there was no reasonable expectation that the wrong would be repeated (Dkt. No. 29). Thus, as in *Briggs* and the previous motion to dismiss, there is no expectation that the expired claim will reoccur with respect to plaintiff.

4

Contrary to plaintiff, *Zeidman v. McDermott & Co., Inc.*, 651 F.2d 1030 (5th Cir. 1981), is distinguishable. There, the plaintiffs' motion for class certification was denied for failure to show numerosity. On the day that plaintiffs submitted additional evidence in support of numerosity, defendants paid each named plaintiff the full amount of their personal claims. The court held that "[w]hen . . . the plaintiffs have filed a timely motion for class certification and have diligently pursued it, the defendants should not be allowed to prevent consideration of that motion by tendering to the named plaintiffs their personal claims before the district court reasonably can be expected to rule on the issue." *Id*. at 1045.

Our case is different. *First*, the plaintiffs there had already filed a motion for class certification that was pending when the mootness question was considered. In the instant case, defendant filed its motion to dismiss prior to plaintiff ever filing the motion for class certification. The scheduling order set a last day to file for class certification, but allowed any earlier motion to be filed. Plaintiff waited until the last day. *Second*, the United States does not seek to pay the claim of only Mr. Russell, the named plaintiff, as in *Zeidman*. Rather, the United States has conducted an audit and adjustment of 45,851 accounts and intends to issue subsequent refunds for approximately 33,902 customers. Thus, this scenario does not invoke the policy concerns of a defendant targeting only the named plaintiffs to prevent a suit and frustrate the objective of a class action.

Nor does *Narouz v. Charter Communication, LLC*, 591 F.3d 1261 (9th Cir. 2010), aid plaintiff. Plaintiff cites *Narouz* as holding that after class certification was denied, the voluntary settlement of the individual claims did not moot the claims. *Narouz* held that "when a class representative voluntarily settles his or her individual claims, but specifically retains a personal stake . . . he or she retains jurisdiction to appeal the denial of class certification." *Id* at 1264. *Narouz* does not apply to the instant case because the motion for class certification here was filed after the motion to dismiss. Additionally, the lead plaintiff in *Narouz* maintained a "personal stake" in the class claims because he was to be rewarded a $20,000 enhancement fee upon approval of the settlement. Plaintiff Russell has no such continued financial interest.

5

Plaintiff argues that because the refund does not include attorney's fees, that maximum relief at trial has not been granted. In *Lewis v. Continental Bank Corp*., 494 U.S. 472 (1990), a bank holding company brought an action for a declaration that a Florida banking statute was unconstitutional. Although the claim was "very much alive when suit was filed," an amendment to the law after appeal rendered the claim moot. *Id*. at 477. In interpreting the effect of a possible interest in attorney's fees, the Supreme Court reasoned that the underlying claim remained moot because "the interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Id*. at 480.

In *Cammermeyer v. Perry*, 97 F.3d 1235, 1238 (9th Cir. 1996), an Army nurse was discharged after stating that she was a lesbian in an interview. Cammermeyer filed suit challenging the discharge. Summary judgment was granted for plaintiff as to her equal protection and due process claims. While the appeal was pending, Cammermeyer was reinstated and the Army policies at issue were revised. Thereafter, the appeal was deemed moot. Cammermeyer argued that since she had a claim for attorney's fees, her claim was not moot. The court rejected that argument and found that "[t]he existence of an attorneys' fees claim thus does not resuscitate an otherwise moot controversy." *Id.* at 1238. Plaintiff argues here that the possibility of attorney's fees keeps his underlying claim alive. Caselaw has clearly established, however, that this alone is not enough to rescue his claim on the merits from mootness.

As to plaintiff's claim on the merits, defendant's motion to dismiss is **GRANTED**.

2. **SUPERVISION OF RELIEF.**

Plaintiff finally requests that this Court supervise the "class relief." In support of this request, plaintiff cites to the complications that have been presented in the *Briggs* settlement. Additionally, plaintiff argues that allowing the claim to be dismissed and "allowing the class fund to disappear on the eve of class certification after significant efforts have been expended by class counsel . . . will have a chilling effect on the willingness of class counsel to represent veterans and others with legitimate claims against the government in the future" (Opp. 19).

6

1    But the truth is that there is no "class relief" for the Court to supervise. The United
2    States has embarked on a refund program, but that is outside the aegis of this lawsuit. If
3    someone does not get relief, he can sue for himself and perhaps all others similarly situated.
4    This order will not diverge from its reasoning in the previous motion to dismiss the UCDPP
5    claim. This order finds that plaintiff's claim is moot and therefore grants defendant's motion to
6    dismiss.

### 3. CLAIM FOR ATTORNEY'S FEES.

The payment to plaintiff did not cover any attorney's fees. In its opening motion, defendant did not move to specifically deny attorney's fees. The issue of whether to grant fees is still a live issue that will be considered after a proper motion has been made.

Although plaintiff's claim for attorney's fees does not revive his underlying claim, "[c]laims for attorneys' fees ancillary to the case survive independently under the court's equitable jurisdiction, and may be heard even though the underlying case has become moot." *Williams v. Alioto*, 625 F.2d 845, 848 (9th Cir. 1980).

### 4. MOTION FOR CLASS CERTIFICATION.

Plaintiff Russell is no longer an appropriate lead plaintiff for the proposed class because his case has been mooted out on the merits through the account adjustment and refund issued by AAFES. Accordingly, plaintiff's motion for class certification is **DENIED WITHOUT PREJUDICE** to the possibility that another plaintiff, whose account has not been adjusted, to come forward, to intervene, and assume the role of lead plaintiff so long as this is done before resolution of the lingering attorney's fees issue.

## CONCLUSION

For the above-stated reasons, plaintiff's underlying claim on the merits is moot and is therefore **DISMISSED**. As to plaintiff's claim for attorney's fees, the issue is not reached and that

7

ancillary matter remains alive. Plaintiff's motion for class certification is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Dated: March 30, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE