IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TAYLOR RUSSELL, on behalf of himself
and all others similarly situated,

    Plaintiff,

  v.

UNITED STATES OF AMERICA,

    Defendant.

No. C 09-03239 WHA

**ORDER ON MOTION TO INTERVENE AND RELATED MOTIONS**

## INTRODUCTION

After a successful class action against the United States involving military credit cards, the same counsel commenced a *second* proposed class action against the United States also involving military credit cards but concerning a different practice. This order addresses counsel's search for a suitable plaintiff in the second action.

The second proposed class action is the instant action, *Russell v. United States of America*. The instant action, like counsel's first class action, *Briggs v. United States of America* (also pending before the undersigned judge), involves credit cards issued by the Army and Air Force Exchange Service ("AAFES") to military personnel.[1] The details of the two claims asserted in the instant action were set forth in a previous order filed on March 30, 2010 (Dkt. No. 61). In brief, the AAFES credit cards targeted in both actions offered two types of repayment plans for credit card purchases: (1) the Uniform Clothing Deferred Payment Plan ("UCDPP"), which applied to purchases of military uniforms, and (2) the Deferred Payment Plan ("DPP"), which

---

[1] The case number for the related *Briggs* action is CV 07-5760 WHA.

1  applied to purchases of other goods. Both claims asserted in the instant action involved allegedly
2  excessive interest charges imposed by the AAFES on debt incurred under these two payment
3  plans. By contrast, the claims in the related *Briggs* action involved tax refunds and other
4  government benefits illegally withheld by the government to satisfy AAFES credit card debt.

5      This omnibus order resolves four separate motions filed by counsel in these two related
6  actions: (1) a motion to enlarge time, filed in *Briggs* (the first lawsuit); (2) a motion to intervene,
7  filed in the instant lawsuit; (3) a motion for a preliminary injunction, filed in the instant lawsuit;
8  and (4) a motion for class certification, filed in the instant lawsuit. As stated, these motions all
9  relate to counsel's search for a suitable plaintiff in the instant action.

10      For the reasons explained below, all four motions are **DENIED**.

**STATEMENT**

12      The procedural history behind both this action and the *Briggs* action provides instructive
13  context to the instant motions. Of particular interest is the fact that the two interest-overcharge
14  claims asserted in the instant action were originally asserted in the related *Briggs* action. In
15  *Briggs*, however, the credit-card interest claims were dismissed as moot approximately four
16  months into the litigation, after the AAFES voluntarily "removed the disputed interest charges"
17  prior to class certification (Dkt. No. 34 at 12–13 in CV 07-5760 WHA). Over a year later, class
18  counsel in *Briggs* filed a motion to intervene in an attempt to revive the mooted interest-related
19  claims (Dkt. No. 92 in CV 07-5760 WHA). Since the *Briggs* action had already been litigated to
20  an advanced stage, the motion to intervene was denied (Dkt. No. 104 in CV 07-5760 WHA).
21  Final approval of a class action settlement in *Briggs* is imminent.

22      The instant case was borne from the failed motion to intervene in *Briggs*. Indeed, the
23  proposed intervenor in *Briggs* — Taylor Russell — was the named plaintiff and proposed class
24  representative in the instant action. In November 2009, however, approximately four months
25  after the instant action was filed, plaintiff Russell's claim pertaining to interest charged on his
26  UCDPP credit-card debt was dismissed as moot (Dkt. No. 29). The remaining claim pertaining to
27  DPP interest charges was also dismissed as moot in an order filed on March 30, 2010 (Dkt. No.
28  61). For both of these claims, the government had simply (and voluntarily) adjusted the credit

*United States District Court*
*For the Northern District of California*

1  card accounts of plaintiff Russell and over 30,000 other putative class members prior to class
2  certification and had issued full refunds based upon the adjustments.

3  The March 30 order also denied, without prejudice, plaintiff's motion for class
4  certification (filed *after* the government had moved to dismiss the case as moot) and left the
5  question of plaintiff's entitlement to attorney's fees for another day.[2]  Importantly, the March 30
6  order left open "the possibility that another plaintiff, *whose account has not been adjusted*, to
7  come forward, to intervene, and assume the role of lead plaintiff so long as this is done before the
8  resolution of the lingering attorney's fees issue" (*id.* at 7) (emphasis added).  This window of
9  opportunity was provided due to counsel's view that the government's voluntary refunds had not
10 been given to the entire putative class.

11 Two days after the March 30 order issued, counsel filed a motion to intervene, a motion
12 for a preliminary injunction, and a motion for class certification in the instant case (Dkt. Nos.
13 62–65).  On April 8, counsel then filed — in the related *Briggs* action — an administrative
14 motion to enlarge time, which (as will be explained shortly) is directly related to the three
15 motions filed in the instant case.  A hearing on these motions was held on April 14, 2010.

## ANALYSIS

17 Both of plaintiff Russell's claims have been dismissed as moot.  As such, this action
18 currently lacks a named plaintiff with a justiciable case or controversy.  Given this backdrop, all
19 of the pending motions hinge upon the success of counsel's motion to intervene.  In other words,
20 if counsel's motion to intervene fails, so too will the motions for a preliminary injunction and
21 class certification — without a plaintiff with "live" claims, these motions automatically fail.

22 The proposed intervenor is veteran Charles Davidson.  While the March 30 order clearly
23 stated that any proposed intervenor must be an individual "whose account has not been adjusted"
24 by the AAFES, Mr. Davidson's account was adjusted by the AAFES in September 2009 to the
25 minimum 12% interest rate specified by his credit agreement (Bedison Decl. ¶¶ 5–9).  This
26 adjustment was made in 2009 because Mr. Davidson was (and still remains) a member of the

---

[2] Since claims for attorney's fees ancillary to a case "may be heard even though the underlying case has become moot," this issue survived the government's motion to dismiss. *Williams v. Alioto*, 625 F.2d 845, 848 (9th Cir. 1980).

3

1    certified class in the earlier and almost completed *Briggs* class action (*id.* at ¶¶ 6, 9). According
2    to the United States, all members of the *Briggs* certified class, including Mr. Davidson, had their
3    interest rates voluntarily and retroactively adjusted to the minimum rate of 12%. This occurred
4    *months* before similar adjustments were made for plaintiff Russell and other putative class
5    members in the instant litigation (*id.* at ¶¶ 5, 6, 8).

6    After making this voluntary adjustment, the AAFES then planned to issue refund checks
7    to *Briggs* class members in for interest overcharges, including Mr. Davidson (*id.* at ¶ 8; Quinn
8    Decl. ¶ 3). At the request of class counsel in *Briggs*, however, these refund checks were
9    *not* issued to *Briggs* class members (Quinn Decl. ¶¶ 3–5). The reason for this request, as stated
10   by Attorney S. Chandler Visher (who represents plaintiffs in *both* actions), was that the voluntary
11   interest refund might "interfere with the Court's intended distribution of [the class] fund" (*id.* at
12   Exh. 3).

13   The *Briggs* case is now on the verge of final approval of a class-wide settlement, where
14   the government has offered to refund 100% of everything improperly collected by the AAFES.
15   As a *Briggs* class member, Mr. Davidson will be receiving a settlement payment (minus
16   reasonable attorney's fees) of close to $400, "which includes a full refund of money collected [by
17   the AAFES] on his debts since 2001 relating to principal, interest charges (*including any alleged*
18   *overcharges*), and penalties" (Opp. 7; Bedison Decl. ¶ 9) (emphasis added). In other words, the
19   approximately $45 of overcharged interest payments sought by Mr. Davidson in the instant
20   litigation (if he were allowed to intervene) are already bundled into his pending *Briggs* settlement
21   payment.

22   This is exactly why counsel filed, on April 8, an administrative motion in *Briggs* to
23   enlarge the opt-out period to allow Mr. Davidson to belatedly opt out of the *Briggs* settlement.
24   The merits of the opt-out motion, filed in the *Briggs* action, is addressed below.

25                              *             *             *

26   To opt out of the pending *Briggs* settlement, a class member had to have sent a letter to
27   class counsel requesting exclusion from the settlement, (2) the letter had to have been signed by
28   the class member, and (3) the letter had to have been postmarked no later than March 31, 2010

4

1  (Dkt. No. 149 in CV 07-5760 WHA). Despite failing to follow any of these procedures, *Briggs*
2  class member Davidson now seeks to enlarge the opt-out period to permit his exclusion from the
3  *Briggs* settlement so that he can intervene and become the named plaintiff in the instant action.[3]

4  The test for determining whether a class member should be allowed to opt out of the class
5  after the applicable deadline has passed is whether his failure to comply with the deadline is the
6  result of "excusable neglect." *See Silber v. Mabon*, 18 F.3d 1449, 1454-55 (9th Cir.1994). This
7  standard allows courts, "where appropriate, to accept late filings caused by inadvertence, mistake,
8  or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv.*
9  *Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388 (1993). When evaluating whether
10 "excusable neglect" applies, a court should consider the "degree of compliance with the best
11 practicable notice procedures; when notice was actually received and if not timely received, why
12 not; what caused the delay, and whose responsibility was it; how quickly the belated opt out
13 request was made once notice was received; how many class members want to opt out; and
14 whether allowing a belated opt out would affect either the settlement or finality of the judgment."
15 *Silber*, 18 F.3d at 1455 (internal footnote omitted). Additionally, the court should consider the
16 danger of prejudice to the opposing party, and whether the movant acted in good faith. *Pioneer*,
17 507 U.S. at 395.

18 Having considered the full scope of equitable factors under *Pioneer*, this order finds that
19 "excusable neglect" has *not* been shown by Mr. Davidson. While it is true that Mr. Davidson's
20 opt-out request — made directly by Attorney Visher to the United States on April 1, 2010 — was
21 only one day late, it was nevertheless late. Additionally, the following factors also support a
22 rejection of the opt-out request: *First*, it is undisputed that the individual, mailed notice provided
23 in *Briggs* easily met the due process requirements required for class actions. *See Eisen v. Carlisle*
24 *& Jacqueline*, 417 U.S. 156, 173-77 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812

---

[3] In addition to objecting to the opt-out motion on the merits, the government objects to the use by counsel of an administrative motion under Civil Local Rule 7-11 rather than a properly noticed motion under Civil Local Rule 7-2. While this order agrees with the United States that an opt-out motion is not a "miscellaneous administrative matter" and a properly noticed motion should have been filed by counsel, this is a moot point. As explained herein, counsel's motion fails on the merits.

5

(1985). Indeed, it would be a strange twist of events if counsel for Mr. Davidson, who is also class counsel in *Briggs*, were to argue that notice in *Briggs* wasn't the "best notice practicable."

*Second*, while it is unquestioned that Mr. Davidson did *not* receive actual notice of the class action or the proposed settlement in *Briggs*, and was not "at fault" for failing to receive such notice (the details of *why* he didn't receive actual notice are explained below), this does not — without more — warrant a finding of "excusable neglect." Indeed, the circumstances underlying Mr. Davidson's opt-out exercise bespeaks manipulation. Here's what happened:

Approximately six months prior to when the first notice of the *Briggs* class action was mailed (announcing the pendency of the class action), Mr. Davidson temporarily relocated from San Francisco to Hawaii for the period of one year (Davidson Decl. ¶ 2). He then moved back to California, except not to the same residence where the *Briggs* class notices — including the second notice pertaining to the pending settlement — had been mailed (*ibid.*; Visher Decl. ¶ 4). The *only* reason Mr. Davidson was alerted to the *Briggs* class action and the pending settlement was because Attorney Visher took the affirmative step of contacting him by phone on March 31, 2010, and on April 1, 2010 (Davidson Decl. ¶ 2).

During the April 1 phone conversation, Attorney Visher informed Mr. Davidson of his right to opt-out of the *Briggs* settlement (even though the settlement will provide a 100% recovery for Mr. Davidson) (Visher Decl. ¶¶ 5–6). Apparently, Attorney Visher did not inform Mr. Davidson in the March 31 phone conversation that the deadline for exclusion from the *Briggs* settlement was set to expire that very day. In the April 1 phone conversation, Mr. Davidson told Attorney Visher that he wanted to be excluded from the *Briggs* class settlement (Davidson Decl. ¶ 6). The reasons behind Mr. Davidson's untimely request were the following (*id.* at ¶¶ 8–10):

> 8.  I chose to opt out of the *Briggs* class and corresponding settlement so I could be a class representative in the *Russell* lawsuit. Mr. Visher has advised me that the government claims that if I receive a refund as a class member in *Briggs* I will not have a claim in *Russell*. Although my understanding is that the *Briggs* settlement does not affect my claims in *Russell*, I would rather opt out of the *Briggs* class than have this issue possibly affect my suitability as a class representative.
>
> 9.  I would like to be a class representative in the *Russell* lawsuit. I understand that, with no representative, the case cannot go forward, which would mean that thousands of veterans

6

> overcharged by AAFES would have no remedy. I am more interested in helping these veterans than receiving an approximately $350 refund.
>
> 10.  As a class representative in the *Russell* case, I have no expectation of receiving compensation beyond my refund as a member of the class. I understand and expect that my recovery, if the case is successful, will be the same as every other class member[.] . . . I know that sometimes class representatives receive some compensation for the time and trouble of being a class representative, but I am motivated by a desire to ensure veterans are treated fairly rather than a desire for personal gain.

Given Mr. Davidson's declaration, a few obvious points must be made: Prior to this phone call, Mr. Davidson had no idea whatsoever that the *Briggs* class action even existed, or that he was about to receive a 100% refund (well over $350) under the *Briggs* settlement agreement (*id.* at ¶ 3). As such, he would not have brought the administrative motion, and would never have requested exclusion from the pending *Briggs* class settlement had Attorney Visher not taken the affirmative steps to solicit him to intervene and be the class representative in the instant action. Moreover, based upon the above declaration, Attorney Visher apparently told Mr. Davidson that in order to be a more "suitable" class representative for this instant action (where his individual claim would be worth approximately $45), he must forego his pending settlement payment in *Briggs*, which amounted to a full refund of *everything* improperly charged or offset by the government. Finally, Attorney Visher apparently told Mr. Davidson that "thousands of veterans overcharged by AAFES would have no remedy" if the instant case remained without a class representative.[4] This manipulation is troubling.

On April 1 (the same day Mr. Davidson informed counsel that he wanted to opt out of the *Briggs* settlement), Attorney Visher moved to intervene with Mr. Davidson in the instant case. Six days later, on April 7, the government filed its opposition to the motion. In its opposition, the government noted that Mr. Davidson's account had already been adjusted and that he would be receiving a 100% refund of everything — including interest overcharges — as part of his settlement payment as a *Briggs* class member. Attorney Visher was therefore presented with a

---

[4] Of course, as emphasized in the conclusion of this order, this is *not true*. Any veteran who believes he or she has not received full relief *on the merits* is free to assert his or her rights in court, by either intervening in the instant case or by filing a new lawsuit, with or without Attorney Visher.

7

choice. He could (1) advise Mr. Davidson to remain in the *Briggs* settlement and keep his $350, but risk losing the motion to intervene, (2) advise Mr. Davidson to opt out of the *Briggs* settlement and forego his 100% refund to improve his chances of successfully intervening in the instant case, or (3) find a more suitable individual (perhaps someone who is *not* a *Briggs* class member and did not have his account adjusted) to intervene. While the last option would have been the best choice to avoid any manipulation, counsel selected the second option.

This weighs very strongly against a finding of "excusable neglect." Indeed, the facts discussed above illustrate that it was *not* Mr. Davidson's "inadvertence, mistake, or carelessness" that caused him to file an untimely request to opt out. *See Pioneer*, 507 U.S. at 388. Rather, Mr. Davidson's declaration makes clear that it was counsel's affirmative acts of manipulation that caused the administrative motion to be filed. For these reasons, the motion to enlarge time to allow Mr. Davidson to opt out of the *Briggs* settlement must be **DENIED**.

\*      \*      \*

Since Mr. Davidson's AAFES account has already been adjusted, and he is in line to receive a generous settlement check in *Briggs* representing "a full refund of money collected on his debts since 2001 relating to principal, interest charges (including any alleged overcharges), and penalties," he is *not* an appropriate intervenor to serve as a class representative in the instant action. Moreover, whether the settlement in *Briggs* is given final approval or not, Mr. Davidson's AAFES account has already been retroactively adjusted, and he stands to receive a refund for these alleged interest overcharges. For these reasons, counsel's motion to intervene is **DENIED**. Because there is *still* no plaintiff in this action with justiciable claims, counsel's motions for a preliminary injunction and for class certification must also be **DENIED**.

Counsel will please understand that any new proposed intervenor in the instant action must be someone whose AAFES account has *not* been adjusted in preparation for a voluntary refund of alleged interest overcharges. Additionally, any proposed intervenor must be free from the manipulation of the type evident in Mr. Davidson's opt-out motion in *Briggs*. Finally, as stated in the March 30 order, a motion to intervene must be brought, if ever, before the resolution of the lingering attorney's fees issue.

With respect to the attorney's fees issue, if counsel wishes to pursue this issue, a motion — noticed on the normal 35-day track — must be filed no later than **MAY 6, 2010**. If no motion is filed by this deadline, judgment will be entered accordingly, and no further motions to intervene will be entertained.

**CONCLUSION**

A few closing points must be made. *First*, this order emphasizes the benefits of patience with respect to the pending settlement in *Briggs*. Waiting until the *Briggs* settlement runs its course will provide greater clarity as to whether any *Briggs* class members still have viable claims against the AAFES for interest overcharges. If it is true, as counsel insists, that some *Briggs* class members have *not* received full relief *on the merits*, they are free to bring a *new* lawsuit against the government, with or without Attorney Visher, or they may move to intervene in the instant lawsuit, so long as the motion precedes the resolution of the attorney's fees issue.

*Second*, any veteran who is *not* in the *Briggs* certified class that has a valid claim against the government pertaining to AAFES interest overcharges is, of course, *free to bring his or her own lawsuit*, with or without Attorney Visher. Or, alternatively, that veteran may come forward to timely intervene in the instant lawsuit. In sum, nothing in this order should be construed as barring any veteran who believes he or she has not received full relief — whether a member of the *Briggs* class or not — from asserting his or her rights in court.

*Third*, if such a motion to intervene in the instant action is timely made, the United States is barred from further adjusting the account *of that specific intervenor* and sending an interest refund check to that intervenor until the Court can sort out the issue of mootness. This bar, however, would not apply to anyone else. The United States would be free, and is encouraged, to issue and mail refund checks to all veterans entitled to them.

**IT IS SO ORDERED.**

Dated: April 23, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9