IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR RUSSELL, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant.<br>_____/ | No. C 09-03239 WHA<br><br>**ORDER REQUIRING DISCOVERY AND DENYING WITHOUT PREJUDICE MOTION TO DISMISS AND MOTION FOR CLASS CERTIFICATION** |

## INTRODUCTION

In this attempted class action involving military credit cards, the court of appeals vacated a dismissal herein and remanded for further consideration in light of the defendant's account adjustments. On remand, defendant renews its motion to dismiss as moot and plaintiff renews his motion for class certification. The motions are **DENIED WITHOUT PREJUDICE**. Discovery shall be conducted in the manner outlined below.

## STATEMENT

**1.  PROCEDURAL HISTORY.**

In this proposed class action, plaintiff Taylor Russell seeks to sue the United States on behalf of soldiers and veterans who used credit cards issued by the Army and Air Force Exchange Service. Russell filed his complaint in July 2009. By March 2010, his final claim of interest overcharges was dismissed as moot because he had been issued a refund check in the amount of

1   $150 to cover any improperly charged interest.  The dismissal order held that Russell's class

2   claim was also moot because he received a full refund for his individual claim before moving for

3   class certification.  The order found that Russell's refund came as part of a voluntary audit of

4   thousands of accounts, "outside the aegis of this lawsuit [and that] this scenario does not invoke

5   the policy concerns of a defendant targeting only the named plaintiffs to prevent a suit and

6   frustrate the objective of a class action."  After dismissing Russell's claim, his counsel was given

7   an opportunity to locate a substitute named plaintiff with a live claim to represent the proposed

8   class (Dkt. No. 61).  Final judgment was entered on June 22, 2010, after possible intervenors

9   were considered and rejected.  Russell appealed the dismissal of the interest-overcharge claim to

10  the Court of Appeals for the Federal Circuit (Dkt. No. 106).[1]

    The Federal Circuit affirmed that Russell's individual claim had been fully satisfied by the
refund of $150 despite purported claims for attorney fees and costs.  *Russell v. United States*, 661
F.3d 1371, 1374–75 (Fed. Cir. 2011).  However, based on its interpretation of an intervening
Ninth Circuit decision in *Pitts*, the Federal Circuit disagreed that mooting Russell's individual
claim warranted dismissing the class claim as moot.  *Id.* at 1376–78.  In *Pitts*, our court of appeals
addressed the issue of mootness before the named plaintiff moves for class certification.  *Pitts v.
Terrible Herbst*, 653 F.3d 1081, 1091–92 (9th Cir. 2011).

    The Federal Circuit interpreted the *Pitts* decision as follows:

> [T]he Ninth Circuit held that in a putative class action, an unaccepted offer of judgment for the full amount of the named plaintiff's individual claim does not moot the class action even if the offer is made before the named plaintiff files a motion for class certification.
>
> . . . .
>
> [The Ninth Circuit's] analysis in *Pitts* appears to indicate that such a "partial payment" would not render the action moot.  The court in *Pitts* ruled that even after receiving a tender of judgment, the named plaintiff may continue to represent the class for purposes of class certification.  If the class is then certified, the court held, the case may continue "despite full satisfaction of the named plaintiff's individual

---

[1] This action was borne from a failed motion to intervene in *Briggs v. United States*, Civ. 07-5760 WHA (N.D. Cal).  Indeed, the proposed intervenor in *Briggs* — Taylor Russell — is the named plaintiff and proposed class representative in the instant action.

2

> claim because an offer of judgment to the named plaintiff fails to satisfy the demands of the class." And if the district court denies class certification, the named plaintiff "may still pursue a limited appeal of the class certification issue." The rationale underlying that line of analysis is that the named plaintiff may continue to represent the putative class members for class certification purposes despite an offer of judgment that would satisfy the named plaintiff's individual claims. *That rationale would appear to apply equally whether the defendant had offered payment of the claims of only a few of the class members or many of them, as long as the offer failed "to satisfy the demands of the class."*

*Russell*, 661 F.3d at 1376–77 (emphasis added). Therefore, the Federal Circuit ordered the following remand instructions:

> In light of the Ninth Circuit's intervening decision in *Pitts* and in light of the post-dismissal adjustment of the 103,320 additional [] accounts, resulting in an additional 69,198 refunds, we conclude that the dismissal order should be remanded to the district court for further consideration. The further audit and the additional refunds raise the question whether and to what extent the *entire prospective class* that Mr. Russell seeks to represent has now been granted the relief, through voluntary action by the government, that his lawsuit was designed to obtain. *Further development of these facts will no doubt help determine if the case, even if not moot at the time of the district court's original dismissal order, is now moot.*

*Id.* at 1377–78 (emphasis added). To summarize, the Federal Circuit held that Russell can continue to be the named plaintiff if the "entire prospective class" has not been granted the relief that this lawsuit was designed to obtain. The remand instructions were to determine whether, upon further factual development, the class claim has been mooted by the AAFES's voluntary account adjustments and refunds.

### 2. FACTUAL BACKGROUND.

The details of in this action have been set forth in previous orders (Dkt. Nos. 61, 105). Russell served in the United States Army on active duty from April 1997 until July 2000. He opened his AAFES credit card account in 1998 and made required payments until the time of his separation from service in 2000. The credit account became delinquent shortly after Russell left service and remained delinquent until the outstanding balance was paid in full through offsets of his federal tax refunds.

3

1    Russell claims that the interest charged was in excess of that allowed in the credit
2 agreement. Russell's credit agreement provided that the interest would not exceed bank prime
3 rate plus 4.75 percent, with a minimum of twelve percent per year (Compl. ¶¶ 4, 48). When his
4 debt was transferred to AAFES collections, his balance was $940. This balance was assessed at
5 14.25 percent, which exceeded the amount allowed under the credit agreement.[2]

6    In February 2010, the AAFES adjusted 46,851 accounts with the same contractual terms
7 as Russell by reducing the interest rate to the twelve percent minimum allowable under the credit
8 agreements. The audit revealed that refunds were due to approximately 33,902 customers,
9 including Russell (Dkt. No. 74 ¶¶ 10–17). A week later, the AAFES sent Russell a refund of
10 $150 for any interest above twelve percent paid on his balance (Dkt. No. 33 Exhs. 1–2). The
11 AAFES used the minimum rate (twelve percent) under the contracts because it was not cost
12 effective to calculate the variable rate by month for the accounts (Dkt. No. 74 ¶ 14). The
13 AAFES's voluntary audit continued after the order dismissing Russell's individual claim as moot.
14 In May 2010, a second audit identified the interest overcharges on additional accounts. This audit
15 resulted in adjustments of an additional 103,320 accounts, of whom 69,198 received refunds.
16 Thus, in total, the AAFES has adjusted 149,781 accounts and issued 101,432 refunds (Dkt. No.
17 97 ¶¶ 11–14).

18    On remand, the AAFES again moves to dismiss the class claim as moot. Russell counters
19 that the entire prospective class has not received relief and moves to certify a class comprised of
20 those who have not received the AAFES's refunds.

**ANALYSIS**

22    The party asserting mootness has a heavy burden to establish that there is no effective
23 relief remaining for a court to provide. *In re Palmdale Hills Property, LLC*, 654 F.3d 868, 874
24 (9th Cir. 2011). The doctrine of mootness, which is embedded in Article III's case or controversy
25 requirement, requires that an actual, ongoing controversy exist at all stages of federal court
26 proceedings. A case becomes moot when the issues presented are no longer "live" or the parties

---

[2] The complaint had alleged that improper interest was charged on both Uniform Clothing Deferred Payment Plan and Deferred Payment Plan balances. The UCDPP claim was dismissed in November 2009 and Russell did not challenge that dismissal on appeal.

4

lack a legally cognizable interest in the outcome of the litigation. In the context of class actions, there are judicially-created rules for when a class claim is mooted upon the mooting of a class representative's individual interest. Where a defendant seeks to "buy off" the small individual claims of the named plaintiffs, the action should not be dismissed as moot because the class' claims would evade review. Thus, an unaccepted Rule 68 offer of judgment — for the full amount of the named plaintiff's individual claim and made before the named plaintiff files a motion for class certification — does not moot a class action. *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1087–92 (9th Cir. 2011).

### 1. APPLICATION OF *PITTS*.

In *Pitts*, the individual plaintiff Pitts filed a class action against his employer, Terrible Herbst, Inc., alleging that Terrible failed to pay overtime and minimum wages to Pitts and other similarly situated employees. Pitts' individual claim for damages was $88. Before Pitts sought class certification, Terrible made a Rule 68 offer of judgment to Pitts for $900, plus costs and reasonable attorney fees. The offer did not address potential claims of other employees. Pitts refused. Our court of appeals held that this rejected Rule 68 offer of judgment to the named plaintiff made before the filing of a motion for class certification did not moot the case. *Id.* at 1084–92.

The Federal Circuit's interpretation of *Pitts* is controlling in this action. Based on its interpretation of *Pitts*, the Federal Circuit held that the AAFES's payment to Russell, which mooted his individual claim, did not moot his class claim unless the AAFES made offers that satisfied the demands of the entire prospective class. *Russell*, 661 F.3d at 1376–78. The Federal Circuit vacated the dismissal order herein even though the AAFES's offer to Russell was not a Rule 68 offer and was not intended to "buy off" Russell's individual claim. On remand, the only question left is whether AAFES's account adjustments and refunds, in total, have granted relief to the entire prospective class that Russell seeks to represent. *Id.* at 1377–78.

The AAFES argues that *Pitts* is not applicable to this action because the decision only created a narrow exception to mootness to prevent a defendant from using Rule 68 to "buy off" a potential class representative. The Federal Circuit's remand instructions preclude consideration

5

of these arguments, reasonable as they may be. The Federal Circuit implicitly rejected these arguments when vacating the dismissal order herein that had found that the AAFES did not try to "pick off" Russell with its non-Rule 68 offer.

### 2. UNANSWERED QUESTION OF WHETHER RELIEF HAS BEEN GRANTED TO ENTIRE PROSPECTIVE CLASS.

Whether relief has been granted to the entire prospective class depends on the composition of the complaint's prospective class. The Federal Circuit found that it was unclear from Russell's complaint whether the 46,851 or 149,781 accounts constituted the entire prospective class:

> [I]t is unclear whether the 46,851 customers whose accounts had been adjusted in February 2010 by the time of the government's motion to dismiss constituted all of the putative class members, or whether the May 2010 audit and adjustment of the additional 103,320 accounts covered the entire class. The government now contends that the May 2010 audit and adjustments are irrelevant to the question whether full relief has been granted to the prospective class, because in the government's view the previous audit and adjustments in February 2010 satisfied the demands of the entire class, as defined by paragraph 48 of Mr. Russell's complaint. That paragraph appears to limit the class to only those individuals who were charged an interest rate "between 12% and prime plus 4.75% per annum." But it is unclear that paragraph 48 actually defines the class that Mr. Russell sought to represent, because paragraph 37 of his complaint appears to define the class in a way that does not limit membership based on interest rate. *In light of the ambiguity of the complaint on that point, it is unclear whether the February 2010 adjustment, alone or in combination with the May 2010 adjustment, satisfied the claims of all class members.*

*Russell v. United States*, 661 F.3d 1371, 1377 (Fed. Cir. 2011) (emphasis added). Paragraph 48 of the operative complaint is found under the "Second Claim" heading and states (Compl. ¶ 48):

> All members of the class have AAFES Credit Agreements that provide that the permissible DPP finance charge is between 12% and prime plus 4.75% per annum.

This encompasses the 46,851 accounts adjusted in February 2010. In contrast, paragraph 37 of the complaint is found under the "The Overcharge Class" heading and states (Compl. ¶ 37):

> The class of persons in the Overcharge Class is defined as: All natural persons (1) from whom AAFES has collected, within the past six years, debt incurred pursuant to an AAFES Credit Agreement and; (2) with respect to whom the amount claimed due exceeded or exceeds the principal amount of purchases plus finance charges permitted by the

6

>AAFES Credit Agreement and; (3) from whom the amount actually collected exceeds the principal amount of the purchases.

This potentially encompasses the 149,781 accounts adjusted by May 2010. Despite the complaint's ambiguity, paragraph 37 gave sufficient notice to the AAFES that the entire prospective class may be comprised of the 149,781 accounts. In fact, a prior order even referenced paragraph 37 as describing the putative class in this action (Dkt. No. 29 at 12).

Russell argues that, even assuming the AAFES identified all putative class members, approximately fifteen percent of the 101,432 accounts that were sent refunds did not receive them because the AAFES would have failed to make an adequate effort to locate account holders' mailing addresses. Therefore, in Russell's renewed motion for class certification herein, he requests this Court only to certify a class of the approximately 15,000 persons who would not have received refund checks (fifteen percent of the 101,432 accounts sent refunds) (Dkt. No. 139 at 2). Russell's estimate of 15,000 potential class members is largely speculative. No discovery has been taken on this refund issue and the AAFES has not provided sufficient information to determine what percent of refunds were not received. The sole basis for Russell's speculation is that in a related case, *Briggs v. United States*, No. 07-5760 WHA (N.D. Cal.), the AAFES had problems locating 15% of class members; specifically, 15.2% of the class notices came back as undeliverable (Dkt. No. 140 ¶ 22). More precision is needed before adjudicating the renewed motion to dismiss and renewed motion for class certification herein.

Both the issue of mootness and the composition of the requested class to be certified require more detail about the AAFES's audits, adjustments, and refunds. The AAFES has thus far failed to provide sufficient information. By **NOON ON MARCH 29**, the AAFES shall file a sworn declaration detailing the number of DPP accounts adjusted, the dates of adjustments, the number of refunds issued, how those refunds were calculated, how mailing addresses were discovered, the number of uncashed refunds, follow-up efforts to resend uncashed refunds (including investigation of new mailing addresses), all relevant dates, and anything else relevant to the issue of whether the entire prospective class in paragraph 37 of the complaint has been granted relief. By **NOON ON APRIL 5**, Russell shall notice the deposition of AAFES's declarant

7

and submit ten narrowly drawn document requests regarding the DDP audits, adjustments, and refunds. The AAFES must timely produce the documents before the deposition. The deposition shall be completed by **MAY 3.** All counsel shall cooperate. After the deposition, Russell can lay out a case for further discovery.

**CONCLUSION**

For the reasons stated, the motion to dismiss and motion to certify are **DENIED WITHOUT PREJUDICE**. Discovery shall be conducted in the manner outlined above. Afterward, parties may renew their motion to dismiss and motion for class certification.

**IT IS SO ORDERED.**

Dated:  March 22, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE