IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TAYLOR RUSSELL, on behalf of himself and all others similarly situated,

    Plaintiff,

  v.

UNITED STATES OF AMERICA,

    Defendant.

No. C 09-03239 WHA

**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND AWARDING ATTORNEY'S FEES AND EXPENSES**

## INTRODUCTION

In this action brought on behalf of users of overcharged credit cards, plaintiff moves for final approval of the class action settlement agreement. For the reasons stated below, the motion is **GRANTED**.

## STATEMENT

Plaintiff Taylor Russell brought this action against the United States on behalf of himself and other individuals who are owed a refund of interest overcharges on credit card retail purchases collected by the Army and Air Force Exchange Service ("AAFES"). The facts have been set forth in a previous order and need not be repeated here (*see* Dkt. No. 29). Briefly, AAFES issued credit cards to military personnel to purchase uniforms and other merchandise from post-exchange stores in U.S. military bases. Plaintiff filed suit, alleging — among other

claims since dismissed — that AAFES charged an interest rate that exceeded the rate allowed by the credit agreement for retail purchases.

AAFES adjusted the interest rate and started issuing refunds of overcharges to credit card holders in February 2010. Tens of thousands of these original refund checks, however, were not cashed or were undeliverable. The settlement class members are military service veterans who did not receive or did not cash the refund checks AAFES sent them. A prior order certified the class and preliminarily approved the settlement agreement (*see* Dkt. No. 205). The order also added an additional 2,857 members to the class whose refund checks were issued in January 2012 through June 2012. Class counsel were directed to give notice to the class members and the fairness hearing was set for August 1. The settlement agreement provides that claims for payment of the original refund checks will be extinguished unless class members opt out of the settlement. The notice set out the terms of the proposed settlement and informed class members of their right to appear at the fairness hearing and object to the proposed settlement.

The settlement class now comprises approximately 63,000 members. No objections were received. Nine class members opted out and ten more are deemed to have opted out by virtue of having cashed the original checks after notice of the settlement. At the fairness hearing on August 1, named plaintiff Taylor Russell appeared.

## ANALYSIS

**1. THE PROPOSED SETTLEMENT AGREEMENT.**

The 63,000 veterans in the settlement class did not receive or did not cash the refund checks sent to them by AAFES. Their ability to do so will be extinguished in the settlement. The principal portions of the settlement agreement are summarized below:

    1. The class includes all persons from whom AAFES has collected debt and interest in excess of the AAFES credit agreement and who were not sent or have not cashed refund checks for the full amount of the interest overcharges.

    2. Class members whose refund checks are three dollars or more will receive a settlement check in the amount of their refund check after subtraction of attorney's fees and expenses. Class members whose refund checks are less than

1     three dollars shall not receive a check; instead, the amount owed to them shall be

2     contributed as a *cy pres* donation to the Army and Air Force Morale, Welfare and

3     Recreation programs and the National Military Family Association.

4         3.    The United States will pay into a settlement fund the total sum of:

5         (1)    The total dollar amount of the refund checks issued

6     in 2010 ($1,971,074.02), less the value of checks that were cashed

7     on or before December 15, 2012 ($0), less the amount of any

8     checks that were cashed on or before the deadline for opting out of

9     the class ($0), less the amount of checks issued to persons who

10    requested to be excluded ($222.73);

11        (2)    The total dollar amount of the refund checks issued

12    in 2012 ($306,232.55), less the value of checks that were cashed

13    on or before December 15, 2012 ($3,429.71), less the value of any

14    checks that were cashed on or before the deadline for opting out of

15    the class ($162.56);

16        (3)    $500,000.00.

17    The total of these amounts, $2,773,491.57, is paid in full

18    satisfaction of the claims in this case.[*] The amount listed under (1) is

19    approximately ten percent higher than the total amount of checks issued in 2010

20    due to the method used to calculate this amount. This surplus — $197,000.00 —

21    is set aside to cover administrative costs.

22        4.    After deduction of litigation expenses, attorney's fees and

23    administrative costs the settlement fund will be paid out to the class members.

24    Funds that remain from uncashed settlements will be donated to the *cy pres* fund,

25    after deduction of additional expenses incurred in distribution by AAFES.

---

[*] At the fairness hearing, counsel for AAFES confirmed the total amount of $2,773,491.57. Russell's motion for final approval of the settlement agreement, however, lists a total amount of $2,773,291.57, $200.00 below the amount the numbers under (1) – (3) add up to. This order will disregard the erroneous calculation in Russell's calculation and rely on counsel's representation of the amount at the hearing.

United States District Court
For the Northern District of California

5. Class members who have timely opted out of the settlement class, or who are deemed to have opted out by cashing their refund check on or before the deadline for opting out, shall not be bound by the settlement agreement.

To repeat, class members initially — in 2010 and 2012 — received a *refund* check for the full amount owed to them by the United States but failed to cash it. The settlement agreement provides a mechanism to find these individuals and offer them their refund as a *settlement* check, albeit in a lower amount. Class members will thus receive less than the amount owed to them by the United States because attorney's fees will be deducted from the settlement fund. Before that deduction, however, class members receive 100 percent of their claims. Therefore, the proposed settlement agreement is fair, reasonable and adequate.

Evidently, the class members are those veterans who require some effort to track down. The benefit of this settlement to the class, then, is that it provides for a way to find these individuals and provide them a settlement check. Pursuant to Section VII of the agreement, a class administrator was appointed to oversee the distribution of the settlement checks after preliminary approval of the settlement agreement. The class administrator mailed the class members a class notice that stated explicitly that "[t]he settlement payment check will be for a lesser amount than [the] prior interest refund check." Some class members proceeded to cash their original refund check or opted out of the settlement; others may be waiting to receive their settlement check, while still others may not have received the notice because the class administrator did not have their current address. The class administrator updated the address list using USPS forwarding information, credit bureau listings and, in some cases, public records databases. Class members whose notices were returned as undeliverable even after the updates took place were placed on a Known Bad Address list; class members who are deceased were placed on a Next of Kin list. In addition to these efforts, the March 5 order instructed notice to be published in the form of a classified ad in the *Military Times*.

Upon final approval of the settlement, a one year class administration period will begin to run. During this period, settlement checks will be sent out to all the addresses currently on file. Private investigators will be used to locate the eleven individuals with the highest check

4

1 amounts. After this first round of mailings, the class administrator will make a final accounting
2 and transfer any funds that remain back to AAFES. AAFES will then update the addresses of
3 the remaining class members using information from IRS databases and other sources, and
4 initiate a second round of mailings in a further attempt to locate veterans who never received
5 their checks. This second round of mailings will be limited to 7,500 individuals. Any funds left
6 from uncashed or undelivered checks, once all planned efforts to locate the class members are
7 exhausted and AAFES reimbursed itself for the second round of mailing, will become *cy pres*
8 donations to the charities listed above.

9 Despite these robust efforts to locate the class members, it remains possible that some
10 claims will be extinguished even though the class members did not receive their checks.
11 Other class members may never be located. Such, unfortunately, is the nature of class actions.
12 An exceedingly reasonable effort was made to locate all class members for the purpose of airing
13 objections.

14 Having considered all relevant submissions and all statements made at the fairness
15 hearing, this order finds that the settlement is fair, reasonable, and adequate as required by
16 FRCP 23(e)(2). Given the efforts by AAFES and the Class Administrator to locate all class
17 members, this order also finds that the form and manner of notice is reasonable and adequate,
18 satisfying the requirements of due process and FRCP 23(e)(1). Accordingly, the motion for final
19 approval of the settlement is **GRANTED** and the settlement is **APPROVED**. Counsel shall file on
20 the public docket a final list of the names of the class members bound by the settlement, and
21 shall file under seal a list of their names and identifying information. The list shall indicate
22 which checks remained uncashed or were returned. Jurisdiction over matters relating to the
23 interpretation, implementation, effectuation, and enforcement of the settlement shall be retained
24 for a period of four years from the date of this order.

25     **2.**     **ATTORNEY'S FEES AND INCENTIVE AWARDS.**
26         **A.**     **Attorney's Fees.**

27 Our court of appeals has held that a court must ensure that attorney's fees and costs
28 awarded to class counsel are "fair, reasonable and adequate." *Staton v. Boeing Co.*, 327 F.3d

1   938, 963–64 (9th Cir. 2003). In the present action, plaintiff's counsel requests a percentage
2   of the settlement fund. Plaintiff's counsel submitted a lodestar fee of $1,188,765; AAFES
3   objected that this lodestar should be adjusted to approximately $950,000.00. Despite these
4   submissions, plaintiff's counsel arrives at his fee request by taking a percentage of the settlement
5   fund.

6   Class counsel requests $1,019,000.00 in attorney's fees. In short, counsel divides up the
7   settlement fund in amounts payable to the class and the additional $500,000.00, demanding
8   25 percent of the former category and 100 percent of the latter. This calculation results in a
9   fees request of $1,019,000.00, which amounts to 37 percent of the recovered amount of
10  $2,773,491.57. The order granting preliminary approval of the settlement agreement explicitly
11  stated that "[i]n no way is the Court granting preliminary approval of any of these amounts"
12  (Dkt. No. 205 at 3). This order finds the requested amount unreasonable and adjusts it
13  downward.

14  To support this fee request, counsel argues that the additional payment of $500,000.00
15  serves "no purpose other than as compensation for the waiver by Class Counsel of the right to
16  seek EAJA fees" because this money would never be recovered by the class members since it is
17  *in addition to* an amount that covers 100 percent of the class members' claims (Dkt. No. 215 at
18  12). Although this argument is rejected by AAFES and the settlement agreement makes no
19  mention of the additional $500,000.00 as extra fees to be paid to class counsel, this order is
20  willing to designate this amount for expenses and fees.

21  Class counsel also asks to be awarded 25 percent of the amount payable to the class.
22  Our court of appeals has made it clear that while a 25 percent benchmark is a good starting point,
23  "courts cannot rationally apply any particular percentage — whether 13.6 percent, 25% or
24  any other number — in the abstract, without reference to all the circumstances of the case."
25  *Vicainzo v. Microsoft Corp.*, 290 F.3d 1043, 1047–48 (9th Cir. 2002) (internal quotation marks
26  omitted). The question is "whether in arriving at its percentage [the district court] considered
27  all the circumstances of the case and reached a reasonable percentage." *Ibid*. *Vicainzo* outlined
28  at least five circumstances a court could consider to determine a reasonable percentage:

1  (1) whether counsel "achieved exceptional results for the class"; (2) the risk to class counsel;
2  (3) whether counsel "generated benefits beyond the cash settlement fund"; (4) how similar the
3  proposed fee is to those in similar cases; and (5) the burden to counsel in conducting the case.
4  *Id.* at 1048–50 (quotations and citations omitted).

5  Class counsel effectively seeks 37 percent of the settlement fund. While counsel's
6  performance in this action was commendable and the risk to counsel was substantial, such a
7  large award would be unreasonably high in light of the large amount above already allocated to
8  fees. Instead, this order awards counsel fifteen percent of the amount payable to the class in
9  addition to what remains of the $500,000.00 after reimbursement of expenses. That is, class
10 counsel is awarded fifteen percent of $2,076,491.57 (*i.e.*, the full settlement amount less
11 $500,000.00 and the $197,000.00 surplus for administrative costs) for a total of $311,473.75,
12 plus what is left of the $500,000.00 payment after reimbursement of litigation expenses. To that
13 extent, the motion for attorney's fees is **GRANTED**. This order notes that in a previous and
14 related action, counsel was already awarded $1,120,000.00 in attorney's fees. *See Briggs v.*
15 *U.S.*, Case No. 07-5760, 2010 WL 1759457 (N.D. Cal., April 30, 2010).

16 **B.    Litigation Expenses**.

17 Class counsel request $40,787.44 for litigation expenses, $14,132.20 for cost of notice
18 published in the *Military Times* and $20,004.19 advanced to the class administrator for postage
19 for the class notice. This adds up to a total amount of $75,001.43. Upon careful consideration
20 of the submitted bill of costs, this order finds the requested costs reasonable. Plaintiff's request
21 for litigation expenses in the amount of $75,001.43 is therefore **GRANTED**.

22 **C.    Incentive Awards.**

23 The settlement agreement also provides for a $5,000.00 incentive award to named
24 plaintiff Taylor Russell and a $2,000.00 award to Foster Franks, the named plaintiff in a related
25 case that was joined with the present action. These awards are supposedly intended as
26 compensation for work done on behalf of the class in this present action, not the earlier action.
27 Russell sat for depositions for approximately nine hours, attended a settlement conference and
28 reviewed emails from class counsel. Franks reviewed documents and made phone calls for

7

approximately eighteen hours. From their sworn declarations, it is not clear whether these activities were performed for the present action or a related action.

Incentive awards are discretionary and, when allowed, "are intended to compensate class representatives for work done on behalf of the class." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2003). For many decades, class actions got along very well without any "incentive fees." The advent of such requests in recent years raises the danger that the class settlement is too low and the class representative is being placated with a special payment no one else gets. If the settlement is not good enough for the class representative, then it is not good enough for the class.

On average, class members stand to recover roughly $36.00 per refund check. Upon review of the list of refund checks issued it becomes clear that checks for a higher amount than $100.00 are outliers. Given the large disproportion of the requested incentive awards to the amount recovered by the individual class members, a downward adjustment of the awards is warranted.

Upon review of the declarations of Russell and Franks, this order finds that they will be awarded $200.00 and $100.00, respectively, to be deducted from the settlement fund. To that extent, plaintiff's motion for incentive awards for Russell and Franks is **GRANTED**.

### D. Distribution of the Fund.

With the above adjustments, the settlement fund will composed as follows:

| | |
|---|---:|
| **TOTAL AMOUNT IN SETTLEMENT FUND:** | **$2,773,491.57** |
| Litigation Expenses: | 75,001.43 |
| Reservation for Additional Expenses: | 25,000.00 |
| Attorney's fees ($500,000.00 less expenses, plus 15% of amount recoverable by class): | 711,472.32 |
| Administrative Fund (less class notice postage advanced by class counsel): | 176,995.81 |
| Incentive Awards: | 300.00 |
| **REMAINING SETTLEMENT FUND:** | **$1,784,722.00** |

8

This distribution of the settlement fund leaves a substantial amount for the class. The proposed budget for class administration is approved in the amount of $197,000.00. Part of this amount was advanced by class counsel for class notice postage and was therefore added to the litigation expenses.

Any surplus in the remaining settlement fund — totaling $1,784,722.00 — will be a *cy pres* donation to the charities listed above. As for the payment of the attorney's fees and litigation expenses, this order holds as follows.

Plaintiff's counsel shall be awarded the $75,001.43 as well as fifty percent of the attorney's fees award upon final approval of the settlement. The remaining fifty percent of the attorney's fees and up to $25,000.00 in additional expenses, for a total of $380,736.16, will be held in reserve. These reserved funds will first be used to pay up to $25,000.00 in administrative budget overruns and other out-of-pocket expenses. Next, the reserved funds will be used to cover glitches in payments to the class members. That will be an incentive to class counsel to supervise the administration of the payouts. The remaining reserved funds may be recovered only after counsel certifies that the fund is completely wound up. If problems do arise and if management of this fund so necessitates, any shortfall in administrative funds may be deducted from the unpaid attorney's fees comprising the reserved fund. To repeat, counsel must pay attention to how the administrator is managing the fund and keep track of how AAFES resolves the second round of mailings. Mistakes may lead to shortfalls and those shortfalls may have to be paid out of the reserved attorney's fees. Any surplus in the reserved funds and the $197,000.00 initial budget for class administration, after all administrative expenses are paid, will be added to the attorney's fees award.

## CONCLUSION

For the reasons stated above, the motion for final approval of the class settlement agreement is **GRANTED** and the settlement is **APPROVED**. Pursuant to Section IX of the settlement agreement, all claims asserted in this action are **DISMISSED ON THE MERITS** as to those class members that failed to opt out of the settlement. Counsel shall file a final list of those class members bound by the settlement as set forth above. Those persons fully release and

9

discharge the United States and AAFES and any of its affiliates from any and all liabilities on claims which they have or may claim now or in the future to have, that were or could have been alleged or asserted against the United States or AAFES or any of its affiliates, relating to any claims for repayment of overcharged interest on the credit cards issued in the present action. Released claims shall not include claims to enforce the settlement. Jurisdiction over matters relating to the enforcement of the settlement shall be retained up to and including **AUGUST 1, 2017**.

The motion for attorney's fees and expenses is *tentatively* granted, in the amounts of **$711,472.32** and **$75,001.43**, to be paid from the settlement fund. These amounts, along with the $176,995.81 administrative fund and a reservation of $25,000.00 in additional expenses, will be distributed as set forth above.

Plaintiff Taylor Russell is awarded an extra incentive fee in the amount of **$200.00**. Foster Franks is awarded an extra incentive fee in the amount of **$100.00**.

**IT IS SO ORDERED.**

Dated: August 2, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE